# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DAMON L. HARMON | : | DOCKET NO. 04-1988 |
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On April 30, 1998, Damon L. Harmon was found disabled due to mental retardation and awarded Supplemental Security Income payments beginning February 1, 1997. (Tr. 94, 14).[1] Upon reaching the age of 18, Harmon's condition was reassessed to determine eligibility under the adult standard of disability. Upon assessment, the agency determined that Harmon's disability ceased as of November 1, 2000. (Tr. 96-98, 112-115). Harmon requested reconsideration of the adverse decision, but the denial was upheld. (Tr. 116-123).

---

[1] Harmon was a minor at the time.

Thereafter, Harmon requested and received a July 3, 2002, hearing before an Administrative Law Judge ("ALJ"). (Tr. 33-44). In a September 10, 2002, written decision, the ALJ found at Step Five of the sequential evaluation process that Harmon's disability ceased as of November 1, 2000. (Tr. 102-108). Harmon appealed the adverse decision to the Appeals Council. On January 31, 2003, the Appeals Council granted the request for review and vacated the ALJ's decision with instructions to obtain vocational expert testimony. (Tr. 145-147). A subsequent hearing was held before an ALJ on January 5, 2004. (Tr. 43-93). However, on March 25, 2004, the ALJ again found that Harmon had not been under a disability since November 1, 2000. (Tr. 14-22). On July 16, 2004, the Appeals Council denied Harmon's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

Harmon now seeks to have this court review the cessation of benefits. He alleges the following errors:

(1) the ALJ failed to fully and fairly develop the evidence, with resulting prejudice;

(2) the ALJ's hypothetical question to the vocational expert was defective; and

(3) the ALJ's finding that plaintiff possessed a 12th grade education is not supported by substantial evidence.

### **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

2

Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to

establish that the claimant can perform other work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

### *Issues 1-2:*

The ALJ found at Step Two of the sequential evaluation process that Harmon suffered from mild mental retardation – a severe impairment. (Tr. 16, 21). However, the impairment was not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 17, 21).

The ALJ next determined that Harmon retained the residual functional capacity for work at all exertional levels, but reduced to jobs requiring the ability to understand, remember and carry out simple one and two-step instructions and requiring only limited public interaction. (Tr. 18-22). The ALJ's residual functional capacity determination is drawn primarily from a three-plus year old consultative examination by Dr. Whiteman and two dependent assessments by non-examining agency physicians. Plaintiff argues that the ALJ posed a defective hypothetical to the vocational expert. By implication, this argument also challenges the ALJ's residual functional capacity assessment.

On October 11, 2000, Harmon was referred to Jerry L. Whiteman, Ph.D., for a psychological/mental status examination. (Tr. 327-329). Harmon reported that he could perform a few household chores such as taking out the trash, raking the yard, and occasionally mowing the lawn. *Id*. He could prepare simple foods such as frying a hamburger. *Id*. Harmon denied ever being treated for emotional or psychological problems. *Id*. He enjoyed playing with his Playstation, shooting basketball with friends, and playing with his dog. *Id*. Harmon was enrolled

4

in an adult education program working towards his GED. *Id*. Harmon was adequately responsive to administration of the Wechsler Adult Intelligence Scale-III (WAIS-III). *Id*. He obtained a full-scale IQ of 67, a verbal IQ of 71, and a performance IQ of 68. *Id*. These scores reflected mild mental retardation. *Id*. Whiteman observed that Harmon's judgment and comprehension were deficient, but that his capacity for understanding cause and effect appeared to be in the low average range. *Id*. Harmon demonstrated slow and sluggish pace and persistence throughout the evaluation. *Id*. Whiteman diagnosed mild mental retardation. *Id*. He concluded that Harmon was capable of understanding, retaining, and following simple and concrete instructions. *Id*. However, Harmon's capacity to maintain attention and concentration was marginal. *Id*. His capacity to tolerate stress was poor due to his limited motivation to persist on more demanding tasks. *Id*. Whiteman opined that Harmon was capable of obtaining some form of semi-skilled employment under supervision, with proper training. *Id*.

In 2000-2001, non-examining physicians completed mental residual functional capacity assessment forms. (Tr. 345-348). They indicated that Harmon had moderate limitations in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; and to set realistic goals or make plans independently of others. *Id*.

Despite Dr. Whiteman's finding that Harmon's attention and concentration were "marginal," the ALJ emphasized that Harmon was able to attend and concentrate at the hearing, and that the non-examining physicians found that Harmon only had moderate difficulty in this

area.[2] Yet, if a claimant's mental residual functional capacity could be determined from his participation at the administrative hearing, then psychological consultations would be superfluous. Morever, the ALJ cannot rely on a non-examining physician's assessment when the findings contradict those of the examining physician. *See, Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).

The ALJ's reluctance to credit Dr. Whiteman's finding that Harmon's attention and concentration were "marginal" is material to the ultimate outcome of this case. Indeed, when initially questioned at the hearing, the vocational expert agreed that an individual with only a "marginal" ability to maintain attention and concentration would not be able to perform any of the jobs that he had previously identified. (Tr. 80).[3]

We further note that the record contains a January 26, 2004, psychological examination report and Medical Source Statement of Ability to do Work-Related Activities (Mental) completed by Dr. Whiteman. (Tr. 352-356). In the report, Whiteman noted that Harmon's

---

[2] The ALJ further emphasized Dr. Whiteman's opinion that Harmon was capable of semi-skilled work with supervision. However, as recognized by the ALJ, physicians' opinions as to the ultimate issue of disability are afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). In any event, Dr. Whiteman's opinion was later updated. *See*, discussion, *infra*.

[3] Following the representative's hypothetical to the vocational expert, the ALJ attempted to re-characterize "marginal" as the inability to follow one or two-step instructions. (Tr. 82). However, the ability to maintain attention and concentration is specifically listed as a mental activity on the MRFC form. (*See*, Tr. 345). Moreover, "marginal" is defined as "close to the lower limit of qualification, acceptability, or function." *Webster's New Collegiate Dictionary* (1977). It appears that "marginal" more closely approximates a "marked" or serious limitation of functioning rather than a "moderate" limitation. (*See*, Tr. 355).
    The vocational expert later stated that he was not qualified to answer the question. (Tr. 82-83).

motivation to cooperate in the evaluation appeared marginal. (Tr. 352-354). Harmon stated that he had been employed at Popeyes, but quit because he could not keep up with the demands of the restaurant. *Id*. He stated that could cook and drive a car. *Id*. Harmon acknowledged sometimes experiencing temper difficulties. *Id*. He indicated that he had been suicidal in the past, and continued to experience suicidal thoughts due to stress. *Id*. Harmon was oriented in all spheres, but his judgment and insight were below average. *Id*. Upon administration of the Wechsler Adult Intelligence Scale-III (WAIS-III), Harmon obtained a full scale IQ of 62 – a score that reflected mild mental retardation.[4] *Id*. Harmon demonstrated specific deficiencies in vocabulary skills and in comprehension of socially appropriate behaviors. *Id*. Whiteman diagnosed depression, provisional, and mild mental retardation. *Id*. He assigned a GAF of 60. *Id*.

Whiteman also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 355-356). He indicated that Harmon had marked limitations in his ability to: understand, remember, and carry out detailed instructions; to make judgments on simple work-related decisions; to interact appropriately with the public, supervisors, and co-workers; and to respond appropriately to work pressures and changes in a usual work setting. *Id*. Harmon further experienced moderate limitation in his ability to understand, remember, and carry out short, simple instructions. *Id*.

Although Dr. Whiteman's latest evaluation and medical source statement were completed two months before the ALJ's decision, they apparently were never furnished to the ALJ. Instead, they were submitted in the first instance to the Appeals Council. Thus, the evidence constitutes

---

[4] His verbal IQ was 66, and his performance IQ was 62. *Id*.

part of the instant record – provided that it was new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[5] Dr. Whiteman's additional diagnosis of depression and resulting limitations constitutes new evidence. Moreover, if credited, the additional mental impairment recognized by Dr. Whiteman could materially affect the Commissioner's analysis, potentially resulting in a *per se* finding of disability at Step Three of the sequential evaluation process. *See*, 20 C.F.R. Subpart P, App. 1, Section 12.05(C). Alternatively, the serious limitations recognized by Dr. Whiteman are inconsistent with the ALJ's residual functional capacity assessment. Finally, the subsequent evidence pre-dates the ALJ's decision and was produced only three weeks after the hearing. In sum, we may properly consider the new evidence, and it further undermines the ALJ's decision.

Because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, we necessarily find that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence.

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

---

[5] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of October, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE